MONCURE, P.,
after stating the case, proceeded as follows:
The defendants took no step to have this judgment of the Circuit court reviewed by this court from the time it was rendered, on the 5th of September, 1856, to the 24th of August, 1861 — a period of nearly five years — which number of years, if it had fully elapsed, would have barred the presentation of a petition for a supersedeas. This delay, in part at least, may perhaps be accounted for by the fact that the cases, of Condon v. South Side Railroad Company, 14 Gratt. 302, and Baltimore and Ohio Railroad Company v. Polly, Woods & Co., Id. 447, which seem to be supposed to have a material bearing upon this case, were not reported until 1859; and by the further fact that the case of the James River and Kanawha Company v. Adams — a case ■ between these same parties founded on a contract almost identically the same with the contract in this case, for the construction of the “Bald Eagle” dam and a river lock connected therewith — was not decided by this court until the 14th of April, 1858, though it was pending here when the judgment of the Circuit court in this case was rendered. The delay is unimportant, however, as it was not for full five years. On the 24th of August, 1861, the defendants applied for 'and obtained an order .for a supersedeas. In their petition they assign for errors, 1st, the refusal of the court to give the 7th, 8th, 11th, 13th and 15th instructions asked for by the defendants; and 2dly, the refusal of the court to set aside the verdict and grant a new trial; in support of which second assignment of error, the decisions of this court above mentioned are cited and firmly relied upon.
*The second assignment of error will first be disposed of, and upon the ground that no exception was taken by the defendants to the opinion of the court overruling their motion for a new trial, upon the plaintiff’s releasing $7,000 of the damages assessed by the jury. Their failure to take such exception may, perhaps, be accounted for in the same way which has been suggested in regard to their application for this appeal, and they may then have had little hope of being able to reduce the amount of damages which might be recovered against them on a new trial to less than $5,000. But whatever their motive may have been in not taking such exception, the effect is the same, and the judgment cannot be reversed for any supposed error of the court in overruling the motion for a new trial. In the first place, all the facts of the case are not certified so as to enable this court to determine the question; and in the second place, if there had been an exception, the plaintiff might have withdrawn his release or declined giving it.
Reference is made in the argument of the appellant’s counsel to what is said to be the “extraordinary conduct of the judge in obtaining from the jury a statement of the grounds of their verdict.” I see no just ground of objection to this course of proceeding. The jury had performed their function by finding a verdict for the plaintiff and assessing his damages. The defendants moved for a new trial. The judge thought that the plaintiff was entitled to recover some damages, but that the amount assessed by the jury was excessive. He wished to end the case, ,and thus prevent the expense, trouble and delay of a new trial, by giving judgment for so much of the damages as he might think just, provided the plaintiff would release the residue. But his difficulty was to ascertain what, was and he referred to the who were judges of the facts and had tried the *case, to aid him in overcoming this difficulty. If he could have come to a satisfactory conclusion in regard to the facts upon his hearing of them in the course of the trial, he might, and' no doubt would, have acted upon that conclusion. But as he could not, or did not, I see no impropriety in calling the jury to his aid. The plaintiff cannot complain, of this, because he is not bound to give the release, which is merely proposed to his election as an alternative to the granting of a new trial; and a fortiori, the defendants cannot complain, because it is for their benefit that the damages are reduced, and they may still except to the opinion of the court if they consider it erroneous. A motion for a new trial is addressed to the sound discretion of the court, and the object of granting it is to attain the justice of the case. If that object could be attained in the mode pursued by the judge in this case, it was proper for him to pursue it.
The other assignment of error will now be considered, and that is, the refusal of the court to give the 7th, 8th, 11th, 12th, 13th and 15th instructions asked for by the defendants.
The 7th is in these words: “That al *415 though the jury may believe that the defendants were responsible for delays, by which the plaintiff was subjected to inconvenience and loss, that upon the present aspect of the pleadings in these causes the plaintiff can recover no damages therefor: not in the action upon the covenant, because such delay is no breach of the written covenants entered into by the defendants; nor in the action on the case, because it only' declares for work and labor done and performed and materials furnished, and lays no claim for damages for any loss, but only ex contractu. ’ ’ The 8th is in these words: 1 ‘That according to that provision of the covenant declared upon, which provides that ‘it is expressly stipulated that although the Canal company “agrees to furnish the cement for this dam, jTet if from any cause the said company should not be able to supply it as required, they shall not be responsible for any damages to the contractor for the want of the same, ’ the plaintiff is not entitled to recover for any failure on the part of the defendants to supply him with cement unless he presented a written requisition for the same as required by the covenant, and the defendants, having a sufficient quantity on hand to supply said requisition at the time, refused to do so.”
The material specifications in regard to cement in the contract are, that “the cement shall be furnished by the Canal company, and shall be taken by the contractor for the dam from some one of the deposits of cement which shall be established by the Canal company, upon the written order which he shall from time to time receive from the engineer for the same, and the engineer shall be the sole judge as to which deposit it shall be drawn from, and shall express the same in said order; and the said contractor shall transport the cement so received to said work in good tight barrels, casks or bags, to be provided by him at his own cost, and shall keep it secured from the weather until used, in suitable cement houses, built at his own cost, one near each abutment, under the direction and subject to the approval of the engineer; but the company shall pay the contractor, upon the completion of the dam, one-half of a cent per bushel per mile for every bushel of cement transported b3r him in good order and actually used in his contract. On presenting the written order of the engineer and receiving the cement, the contractor, his agent or boatman, shall apply to the company’s agent from whom he received it, for a certificate of the quantity and quality of the cement which may be delivered to him; which certificate shall be presented to the assistant engineer, on the arrival of the “cement at the place where it is to be used, and it shall be the duty of the assistant engineer to examine and compare the cement delivered there with that which the certificate calls for. No cement shall be used in the work which shall have been damaged on its passage from the mill, depot or kiln, or whiie in the possession of the contractor; and in the event of any cement being so damaged, the loss of the same shall be sustained by .the contractor. It is expressly stipulated, that although the Canal company agree to furnish the cement for this dam, yet if from any cause the said company shall not be able to supply it as required, they shall not be responsible for any damages arising to the contractor from the want of the same.”
By these stipulations of the contract the company were bound to furnish the cement for the dam, as required by the contractor as aforesaid, if of abilit3T to do so, and were responsible for any damages arising to the contractor from the want of the same, if, being able, they failed so to furnish it. It was not a sufficient excuse for failing so to furnish it, that they had not a sufficient quantity on hand to supply it as required. It was their duty to use due and reasonable diligence to obtain and keep on hand a sufficient supply for that purpose. The 7th and 8th, instructions asked for by the defendants were therefore properly refused. The 7th, because, if the plaintiff sustained damages for being delayed by the failure of the defendants to furnish the cement as aforesaid according to their covenant, then the plaintiff was entitled to recover such damages in the action of covenant. And the 8th, because it confines the title of the plaintiff to recover for any failure on the part of the defendants to supply him with cement, to the single case of their refusal to do so on his presentation of a written requisition for the same as required by the covenant, they having a “sufficient quantity on hand to supply said requisition at the time: thus ignoring the obligation of the defendants to use due and reasonable diligence to obtain and keep on hand a sufficient supply. The instruction should have been to the effect, “that the plaintiff is not entitled to recover for any failure on the part of the defendants to supply him with cement unless he presented a written requisition for the same, as required by the covenant, and the defendants refused to do so, though they had, or might, by using reasonable diligence, have had a sufficient quantity on hand to supply said requisition at the time.”
The 11th instruction asked for by the defendants is in these words: “that at any time during the’ progress of the work they had a right under said contract to abandon the construction of the lock on the south side of the river, and to erect it on the north side and to change the materials out of which it was to be constructed; and that they incurred no other liability than that prescribed in the contract itself, that of pa3'ing all the additional expense for increase of work or materials prescribed . in the covenant caused b3r said work.”
I can see no just ground of objection to this instruction, and think it ought to have been given. The contract, as we have seen, expressly bound the contractor to construct in a substantial and workmanlike man *416 ner the “Pedlar dam” and river lock connected therewith, in conformity with the annexed specification, and with the plan of the said dam and the river lock exhibited by the company, and with such changes and alterations thereof as might thereafter be adopted by the president and directors of the said company; thus reserving to the defendants the right to adopt such changes and alterations of the work as they might thereafter think proper; and they had, therefore, aright, under the contract, to *abandon the construction of the lock on the south side of the river, and to erect it on the north side, and to change the materials out of which it was to be constructed,; and by so doing, thejr incurred no other liability than that prescribed in the contract itself; that of paying all the additional expense for increase of work or materials, caused b3r the adoption of such changes and alterations, for the ascertainment and payment of which additional expense express provision was made by the contract. There being no breach of the contract on the part of the defendants by reason of any such changes and alterations, they could have incurred no, liability therefor beyond what the contract prescribed, and if any other damage was sustained by the plaintiff therefrom it was damnum absque injuria.
Note. — The case of The James River and Kanawha Company v. Adams, referred to in this case, was decided by this court on the 14th day of April, 1858. It was founded on a contract for the construction of the “Bald Eagle dam” and a river lock connected therewith; which contract was similar to the one on which this case is founded. All the judges were present, except Judge Daniel, who had an interest in the case, which prevented him from sitting; and all present concurred in the following opinion, delivered by Judge Moncure, which sufficiently states the case to make the opinion intelligible,
I am of opinion that the Circuit court erred in refusing to give the 4th instruction; and also in giving the instruction which it did in lieu thereof. The 4th instruction is according to the substance and almost in the very words of the contract, and ought therefore to have been given in the form in which it was asked. The contract prescribes the mode in which monthly estimates are to. he made and approved, of the quantity and value of each species of work done in pursuance thereof at the prices contained in the proposal, &c., and directs that the value of any extra work done in consequence of any alteration of the plan, &c., should be included in the said estimates. It then expressly declares that any estimate made and approved as aforesaid, shall he final and ’conclusive, unless obj ected to before paid, &c. There is nothing unlawful in these provisions of the contract, and full effect must therefore be given to them. .How, .then, could the court "with propriety refuse to instruct the jury that estimates so made and approved, and the receipt of the money specified therein, are by the terms of the covenant to be regarded conclusive evidence as between the parties, of the prices of the work, &c., as therein set forth? And how could the court with propriety instruct the jury that such estimates and receipts were prima facie evidence only of the prices of the work, &c. ? The error was not cured by further instructing the- jury that to enable the plaintiff to rebut and overcome such prima facie evidence, and to recover for such work, &c., ^higher prices than those mentioned in such estimates and receipts, he must prove that an agreement was made between him and the defendants for such higher prices'; or that there was no agreement between them on the subject of price, so as to leave that an open question to be settled by the jury upon the principle of a quantum meruit, in assessing their damages in an action of covenant. If there was in fact a new agreement between the parties as to prices, then the action to recover such prices should have been upon the new agreement and not upon the covenant. This action being upon the covenant, only the covenant prices can be recovered. If there was no new agreement between them on the subject of price, the question was not an open one to be settled by the jury, but was closed by the covenant, which provided a mode of ascertaining it. The covenant provided for the construction of the entire work in conformity with a specification and plan agreed upon, with such changes and alterations thereof as might afterwards be adopted by the company; and it provided a mode of ascertaining the amount to be paid for the entire work, whether done in pursuance of the said specification and plan, or of any such changes and alterations. That mode was by monthly and final estimates. If made, approved and not objected to according to the covenant, they are, by the very terms of the covenant, final and conclusive.
*416 The 13th instruction asked for by the defendants is, that if the jury “believe from the evidence, that notwithstanding any modification, change or alteration in the plan, construction or material used, the plaintiff continued the work, and the work done in pursuance of such modification, change or alteration, was estimated according to the terms of the contract, the plaintiff is not entitled to recover in this action for any work done according to said modification, change or alteration, or any loss of time, or consequence thereof, unless the defendants acted in bad faith.”
I think this instruction also ought to have been given, and substantially for the reasons assigned in regard to the 11th instruction. Of course the instruction must be understood as implying, what the evidence tended to prove, that the work done in pursuance of such modification, change or alteration was paid for, as well as “estimated, according to the terms of the contract;” but to make the meaning more plain, the words “and paid,” should have been inserted after the word “estimated. ’ ’ If the defendants *acted in good faith in regard to any modification, change or alteration made by them in the plan, construction or material of the work, and estimates were duly made and paid according to the terms •of the contract, there could be no further liability on them for any work done according to said modification, change or alteration, or any loss of time or consequence thereof, for there was no breach of the contract in that respect.
The ISth instruction to the jury asked for ’.by the defendants was, “to disregard all evidence of a failure on the part of the defendants to supply the plaintiff with cement prior to the 8th day of December, 1848 (the date of the covenant sued on);” which instruction the court refused to give as asked for, but gave it in a modified form as follows, to wit: “that the jury should disregard all evidence of a failure on the part of the defendants to supply the plaintiff with cement prior to the 8th day of December, 1848 (the date of the covenant sued on), unless it should be proved to the satisfaction of the jury, that the said covenant was executed before the 8th day of December, 1848.”
lean perceive no just ground of objection to this modification of the instruction asked for, and no injury which it could have caused to the defendants. I therefore think the court did not err in giving the instruction in the modified, instead of the original, form. There is evidence in the record that the work was commenced, and the covenant may have been executed, before the day on which it bears date. If it was, it should have effect from the time at which it was executed. If it was not, then the defendants had the full benefit of their instruction in the form in which they offered it.
Upon the whole, I think the court erred in refusing to give the 11th and 13th instructions asked for by the defendants, and therefore the judgment ought to be reversed, *the verdict set aside, and the cause remanded for a new trial to be had therein; on which new trial, should the evidence be in substance the same as on the former trial, and the said instructions be again asked for, they ought to be given.
JOYJYES, J., concurred in the opinion of Moncure, P.
Judgment reversed.
But even if the question as to the price of any of the work done by the plaintiff under the covenant could ever have been considered as an open one, it was certainly settled and concluded by the .facts that such work was included in estimates made and approved according to the covenant, and that the plaintiff, without objection thereto, had, either in the manner mentioned in the covenant or otherwise, received the money mentioned therein and executed receipts therefor. Such estimates and receipts ought surely to be regarded as conclusive evidence of the price of the work, even without reference to the terms of the covenant expressly declaring them to be so. The monthly estimates (33 or 34 in number) appear generally to have been made on the first day of each month, commencing July fist, 1848, and ending May 1st, 1851. The amount due on each estimate was paid a few days after its date, and a receipt, written under the estimate, was given by the plaintiff for the amount; “being,” as eachreceipt expresses, “full payment for the work done by me on the above mentioned dam up to the date of the above estimate, after deducting the reserved twenty per cent, as above stated.”
It is argued by the counsel for the defendant in error, that there is a difference between monthly and final estimates in regard to their effect as evidence; and that while the latter are conclusive according to the decision of this court in Kidwell v. The Baltimore and Ohio Railroad Go., 11 Gratt. 676, the former are not. Whether either are conclusive or not, depends upon the contract, which may make ^either or both conclusive, according to the intention of the parties. Sometimes these monthly or periodical estimates are obviously designed as mere approximations, < to enable the company to make safe and reasonable advancements to the contractor during the progress of the work. All that is required to the validity of such estimates (it has been held) is, that they were made bona fide and with the intention of acting according to the exigency of the contract. Redfield on Railways, 207; Rouqerv, Great Western Railway, 27 Eng. L. & E. R. 35-46. If evidence at all in an action for the balance due on the completion of the work, they would onlybe prima facie; or, if conclusive,,it could 'only be as an estoppel in connection with evidence of the assent of the parties. But ordinarily these monthly estimates are designed to be accurate and final, as far as they go; and sometimes the contract expressly provides that they shall be final and conclusive.' Redfield 207; Ilerrick v. Belknap's estate, &c., 27 Verm. R. 673; Barker, &c. v. Same, Id. 700. The contract in this case so provides. It prescribes the same mode of proceeding in regard to the final as in regard to the monthly estimates, and declares both, alike, final and conclusive. Indeed, it directs the final estimate to be made, not of the whole work, but of all work not ernbraced informer estimates. Thus showing that, in effect, the final estimate is the last monthly estimate, and all the monthly estimates, as far as they go, are final estimates. It is true that these monthly estimates are not final and conclusive as to matters not embraced therein, or not considered and estimated by the engineer in making them. In this respect they are unlike the final estimate, which was intended and expressly .directed to embrace “all work not embraced in former estimates;” so that while a part of the work might have been omitted in former estimates because of its unfinished state or otherwise, it must of necessity be embraced in the final estimates. But as to matters embraced in the monthly estimates, they are as conclusive as the final estimate.
But it is argued that a fraudulent estimate is not conclusive, and that therefore the court would have erred in giving the 4th instruction asked for by the defendants. Without deciding whether fraud in making the estimates would avoid them at law or not. it is a sufficient answer to the argument to say that fraud will not be presumed, and that there was no evidence whatever of any such fraud before the jury. If the plaintiff had evidence of any such fraud, he should have offered to introduce it, and thus have' plainly raised the question. Indeed, there is no charge of fraud in the declaration, and certainly the court did not refuse to give the 4th instruction, and give another in lieu thereof, on the ground of fraud, but on wholly different and inconsistent grounds. An award is final and conclusive in equity as well as at law; and yet it may be avoided, always in equity and sometimes at law, by proof of fraud. Such proof, *when admissible, gets the award out of the way. So long as it remains in the way, it is final and conclusive. It is never prima facie evidence merely, of I the matter it decides.' If evidence at all, it must be conclusive. And so of the monthly estimates in this case. If evidence at all they must be conclusive and not prima facie. They were offered and received as evidence without objection. No motion was made to exclude them. No evidence was offered to impeach them on the ground of fraud or otherwise. The court, therefore, erred in refusing to instruct the jury that they were conclusive, and instructing them that they were prima facie evidence only of the prices of the work, &c.
I am therefore of opinion that the judgment should be reversed.